IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| TAMELA CLEO SALDANA, § | |
| PLAINTIFF, § | |
| § | |
| V. § | CIVIL NO. A-14-CV-282-LY |
| § | |
| TEXAS DEPARTMENT OF § | |
| TRANSPORTATION, RON WILSON, § | |
| SUZANNE LATIMER, DEE PORTER, § | |
| AND BENITO YBARRO, § | |
| DEFENDANTS. § | |

### ORDER ON MOTIONS TO EXCLUDE EXPERTS

Before the Court are Defendants' Motion to Exclude Plaintiffs Expert, Kyle Maldiner, filed April 27, 2015 (Clerk's Dkt. No. 36); Plaintiffs response, filed May 4, 2015 (Clerk's Dkt. No. 38); Defendants' Motion to Exclude Plaintiff's Expert, Aline Zeringue, filed April 28, 2015 (Clerk's Dkt. No. 37); Plaintiff's response, filed May 5, 2015 (Clerk's Dkt. No. 39); Defendants' Motion to Exclude Expert Testimony of Tamela Saldana, filed May 6, 2015 (Clerk's Dkt. No. 40); Plaintiffs response, filed May 20, 2015 (Clerk's Dkt. No. 43); and Plaintiffs reply, filed May 27, 2015 (Clerk's Dkt. No. 48). The motions were referred to United States Magistrate Judge Mark Lane pursuant to 28 U.S.C. § 636(b)(1)(a), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C to the Local Rules of the United States District Court for the Western District of Texas.

**I.   BACKGROUND**

Plaintiff Tamela Cleo Saldana ("Saldana") contends she was wrongfully terminated from the Texas Department of Transportation ("TxDOT") while serving as a Section (or Program) Director for the Office of Civil Rights Disadvantaged Business Enterprise, Historically Underutilized Business Program and Small Business Enterprise Programs. Saldana asserts causes of action for discrimination, hostile work environment, Title VII retaliation, and whistleblower retaliation, naming

as defendants TxDOT and Ron Wilson ("Wilson"), Office of Civil Rights Director (jointly, "Defendants").[1]

Saldana designated several expert witnesses to testify in support of her causes of action, three of whom are pertinent to this Order. First, Saldana designated Kyle Maldiner ("Maldiner") as a retained expert. (Clerk's Dkt. No. 16). Maldiner has worked in the areas of human resources, employment, and labor law for over 30 years. (Clerk's Dkt. No. 36 Ex. A at 2–3). She has a Bachelor of Arts in psychology and a Juris Doctor. (Clerk's Dkt. No. 36 Ex. A at 15). Maldiner is expected to testify as to whether "[TxDOT's] policies and practices regarding retaliation and harassment in the workplace" were consistent with generally accepted standards themselves and as applied to Saldana. (Clerk's Dkt. No. 36 Ex. A at 2). She is also expected to testify as to whether Defendants' investigation that resulted in Saldana's termination and Defendants' termination procedures as applied to Saldana were consistent with generally accepted practices. (*Id.*).

Second, Saldana designated Aline Zeringue ("Zeringue") as a non-retained expert. (Clerk's Dkt. No. 16). Zeringue is a clinical nurse specialist and board-certified advanced practice nurse (nurse practitioner) with a Master of Science in Nursing and a Bachelor of Science in psychology. (Clerk's Dkt. No. 39 Ex. A at 1). She has been a registered nurse for 16 years and a nurse practitioner for 13 years. (*Id.*). Zeringue is expected to testify regarding Saldana's physical and mental well being during her employment with TxDOT, based upon Zeringue's treatment of Saldana over the past ten years. (Clerk's Dkt. No. 39 Ex. C). She is also expected to testify about the medications and psychotherapy she has prescribed Saldana in the past. (*Id.*).

---

[1] Also named as defendants are Suzanne Mann Latimer, Benito Ybarra, and Dee Porter in their official capacities. All claims against these defendants in their individual capacities were dismissed. (Clerk's Dkt. No. 29). However, the motions considered herein were filed by TxDOT and Wilson.

Third, Saldana designated herself to testify as a non-retained expert in this case. (Clerk's Dkt. No. 16). Saldana has a Ph.D. from the African and African American Diapora Doctoral Program in anthropology at the University of Texas, a Masters of anthropology from the University of Texas, a Masters of public administration from Southwest Texas State University, and a Bachelor of Science in communications from the University of Texas. (Clerk's Dkt. No. 40 Ex. B at 1). She held her position with TxDOT for eleven years before she was terminated. (*Id.*). Although it is somewhat unclear, it appears Saldana expects to testify as an expert on topics relating to "the documents previously produced [by Saldana during discovery]" and "documents identified in the [Equal Employment Opportunity Commission ("EEOC")] and [Texas Workforce Commission] ("TWC") charges, grievances, appeals and correspondence produced" (Clerk's Dkt. No. 43 Ex. E at 3); certain topics regarding the minority business community and related state and federal regulations; TxDOT's complex program requirements, rules, and regulations; and TxDOT's purported violations of federal regulations. (Clerk's Dkt. No. 43 at 4–5).

Defendants now move to exclude the above-named individuals from testifying as experts or presenting expert reports to the jury. The undersigned held a hearing on this matter on June 24, 2015. Having considered the parties' arguments at the hearing, the briefing, and the applicable case law, the undersigned issues the following opinion and order.

## II.   STANDARD OF REVIEW

Courts examine the admissibility of expert testimony under Federal Rule of Evidence 702, as narrowed by *Daubert*, focusing on the testimony's relevance to the proceeding and the reliability of the expert's methodology. FED. R. EVID. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993). *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (Rule 702

3

and accompanying *Daubert* checklist apply to both scientific and non-scientific testimony); *United States v. Tucker*, 345 F.3d 320, 327 (5th Cir. 2003) (same). Opinion testimony from "a witness qualified as an expert by knowledge, skill, experience, training, or education" is admissible if such testimony will assist the trier of fact and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702.

In *Daubert* the Supreme Court identified a number of other factors a trial court may use in determining an expert's reliability. Trial courts are to consider the extent to which a given technique can be tested, whether the technique is subject to peer review and publication, any known potential rate of error, the existence and maintenance of standards governing operation of the technique, and, finally, whether the method has been generally accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593–94. Relevance and reliability examinations represent the threshold test in the nonexclusive *Daubert* analysis. *Id.* at 595. Relevance requires that the expert testimony include a "reasoning or methodology [that] can be properly applied to the facts in issue." *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999). Reliability requires that the testimony relate in some way to the facts of case such that it aids the jury in resolving factual disputes. *Daubert*, 509 U.S. at 591. Generally, a trial court must determine if the expert "employs in the court the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

Under the *Daubert* framework, trial courts act as gatekeepers, making preliminary assessments of an expert's qualifications, relevance in light of the facts, and reliability of the methodology employed. *Id.* at 147; *Tucker*, 345 F.3d at 327. The factors mentioned in *Daubert* "do

4

not constitute a definitive checklist or test;" rather, the Rule 702 inquiry is "a flexible one," and "the gatekeeping inquiry must be tied to the facts of a particular case." *Kumho Tire*, 526 U.S. at 150. *See also Black v. Food Lion, Inc.*, 171 F.3d 308, 311–12 (5th Cir. 1999) (Daubert factors are not mandatory or exclusive, but rather should be used as starting point, and court should ascertain if other factors should be considered). A judge acting in their gatekeeping role is no replacement for the adversarial system properly fulfilling its role of challenging the weight of the expert's testimony rather than its admissibility. *United States v. 14.38 Acres of Land Situated in Leflore Cty., Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002). However, although court rejecting expert testimony is the exception rather than the rule, no court may "discretionally disavow the *Daubert* factors" when a guided analysis calls into question the qualifications, relevance, or reliability of an expert's testimony. *Daubert*, 509 U.S. at 592–93; *Food Lion, Inc.*, 171 F.3d at 311.

### III. ANALYSIS

#### A. Maldiner

The parties agree Maldiner is qualified to testify as an expert. However, Defendants argue Maldiner's testimony and expert report should be excluded because: (1) her purported expert testimony only offers improper legal opinion; (2) her methods and testimony are unreliable; (3) her opinions do not assist the trier of fact; and (4) her supplemental report was not timely produced.

As to the first argument, Defendants contend Maldiner's expert report defines "generally accepted human resource practices" as "those which are nondiscriminatory, based on legitimate business goals and objectives, and which conform to generally accepted standards . . . ." (Clerk's Dkt. No. 36 at 4). Because Maldiner concludes Defendants' human resource practices and their

application to Saldana were deficient, Defendants believe Maldiner offers improper legal opinions regarding discrimination and legitimate business goals and objectives.

Of course, experts cannot offer conclusions of law. *C.P. Interests, Inc. v. California Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001). Maldiner concludes in her expert report, "TxDOT did not act consistently with generally accepted human resource practices in that it failed to take steps to protect Saldana after she filed grievances, conducted an inadequate investigation of her relationship with a vendor, and failed to follow its own written procedures when Saldana appealed the termination decision." The undersigned fails to see how, when considered in context, Maldiner's opinion that Defendants did not follow "generally accepted human resources practices" is a legal opinion. Rather, Maldiner's opinion includes an ultimate issue to be decided by the trier of fact, which is permitted by Federal Rule of Evidence 704(a). *See* FED. R. EVID. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue."); *see also C.P. Interests, Inc.*, 238 F.3d at 697 (opinion testimony may include ultimate issue to be decided by trier of fact).

Defendants next argue Maldiner's methods and testimony are unreliable because she does not refer to any methodology in her expert report, and she relies on unreliable and irrelevant data. Specifically, Defendants point out that Maldiner cites to a 2013 policy that was implemented almost a year after Saldana's termination, and admits the 2013 policy is irrelevant to this case. Maldiner also admitted during her deposition that she did not review the entire Human Resources Manual from 2012, nor did she review any training materials TxDOT offers regarding harassment. Defendants further maintain Maldiner only reviewed the one-page investigation report in determining that Defendants did not follow generally accepted practices in conducting the investigation of Saldana's actions. Finally, Defendants contend Maldiner opined that termination of employment usually

6

includes progressive discipline, but was unaware that Saldana purportedly committed a knowing violation of TxDOT policy, which does not warrant progressive discipline.

Maldiner does not make specific reference to a "methodology," but the undersigned will analyze her reasoning and whether it is "scientific" within the meaning of *Kumho Tire*. *See United States v. Kuhrt*, __F.3d__, 2015 WL 3540700, at *12 (5th Cir. 2015) (courts must conduct a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid . . . ."); *Kumho Tire*, 526 U.S. at 152 (testimony is "scientific" when "an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice in the relevant field."). Maldiner states in her report that her definition of generally accepted human resource practices is "derived from judicial decisions, regulations, and other guidance issued by government agencies, and scholarly research and publications related to human resource practices." (Clerk's Dkt. No. 36 Ex. A at 6). Maldiner cites the United States Equal Employment Opportunity Commission Guidance for employers ("EEOC Guidance"), which she contends is now widely accepted as establishing standard human resource practices regarding preventing and responding to harassment in the workplace. (Clerk's Dkt. No. 36 Ex. A at 8). Maldiner then lists the elements required by the EEOC Guidance, and compares TxDOT's Harassment Policy to each element. (*Id.*). Maldiner next outlines a sample anti-harassment policy from the Society of Human Resources Management ("SHRM"), which she describes as "the world's largest professional association devoted to human resource management." (Clerk's Dkt. No. 36 Ex. A at 8–9). She carefully explains why she believes TxDOT's Harassment Policy failed to meet generally accepted human resource standards as denoted by SHRM. (Clerk's Dkt. No. 36 at 9).

In analyzing whether Defendants conducted an adequate investigation into Saldana's purported misconduct, Maldiner cites to the Association of Corporate Counsel's InfoPak on Internal Investigations, and two articles entitled "How to Avoid Botched Investigations," and "Proper Workplace Investigations," published by SHRM. (Clerk's Dkt. No. 36 at 10). Those articles provide a roadmap of proper investigation procedures, which Maldiner believes TxDOT did not follow. Maldiner's methodology, which Saldana describes as "the same methodology [Maldiner] would have used if she had conducted [TxDOT's investigation into Saldana's purported misconduct]" is based on her professional experience and research. (Clerk's Dkt. No. 38 at 6). Considering Maldiner's well-cited expert report, Saldana has shown Maldiner's opinion relies on professional sources and that her testimony will demonstrate the intellectual rigor that characterizes the practice in the human resource field. *See Enos-Martinez v. Bd. of Cty. Comm'rs of the Cty. of Mesa*, 2012 WL 1079442, at *4 (D. Colo. Mar. 30, 2012) (expert report citing several standards and publications expert relied upon when forming opinions constituted sufficient evidence that expert's opinion is the "product of reliable principles and methods" (quoting FED. R. EVID. 702)).

Although Maldiner conceded during her deposition that she incorrectly cited TxDOT's 2013 Harassment Policy in her expert report, when the policy relevant to the case is a 2012 policy, she later testified that she recalled reviewing a copy of the 2012 policy. (Clerk's Dkt. No. 36 Ex. B "Maldiner Depo." at 36–36, 51, 97–100). Further, Maldiner's decision to not review the entire 2012 Human Resources Manual or TxDOT training manuals appeared to be based on her belief that these materials are irrelevant, "a different animal." (Maldiner Depo. 100:21–101:24). Consequently, Defendants' challenges largely relate to the bases of Maldiner's opinions. Questions relating to the bases of an expert's opinion affect the weight of the opinion, rather than its admissibility, are

properly left for the jury's consideration. *14.38 Acres of Land*, 80 F.3d at 1077. *See also Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (role of adversarial system, not court, to highlight weak evidence). Accordingly, to the extent that Defendants claim the basis of Maldiner's opinions are incomplete or erroneous, those contentions can adequately be addressed through vigorous cross-examination. The undersigned therefore declines to exclude Maldiner's testimony on these grounds.

As to their third argument, Defendants maintain Maldiner's opinions do not assist the trier of fact in drawing a conclusion about whether the reasons for termination offered by Defendants are legitimate. In support, Defendants point out that Maldiner simply disagrees with TxDOT's policies and practices, which is irrelevant to determine whether Saldana's termination was motivated by discriminatory or retaliatory intent. Testimony from an expert witness must, of course, be relevant. *See Pipitone*, 288 F.3d at 245 ("[T]o be admissible under Daubert, [the witness's] testimony must not only be reliable, but also must be relevant to the issue [in question]."). During the hearing on this matter, counsel for Saldana contended that it is important for the jury to understand TxDOT's policies and why they were deficient. Specifically, counsel contended that the policies applied to Saldana were different than those applied to other TxDOT employees, thus it is crucial for the jury to understand why the policies applied to Saldana were below accepted standards. Based on counsel's representation, Saldana has shown Maldiner's expert testimony that TxDOT's policies fall below accepted standards is relevant to "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.*

Finally, Defendants argue Maldiner's supplemental expert opinion was not timely produced on or before the February 27, 2015 deadline and therefore should be excluded. Saldana submitted

the supplemental expert opinion on April 13, 2015. Untimely supplements to the expert report are generally only admissible if they do not include material changes or corrections to expert opinions. *Harmon v. Ga. Gulf Lake Charles LLC*, 476 F. App'x 31, 38 (5th Cir. 2012). The one-paragraph supplement reads in part, "Based on the information I have reviewed, in my expert opinion, Tamela Saldana was subjected to post-termination retaliation." (Clerk's Dkt. No. 36 Ex. B at 2). Saldana contends Maldiner's supplement simply expounds upon her earlier notations that she has been unemployed and underemployed as a result of Defendants' misconduct. Construing the expert report and supplement leniently, the supplement is not a material change to the expert report; it merely characterizes Saldana's unemployment and underemployment as retaliatory. Moreover, although the supplement was untimely, Saldana provided it to Defendants during Maldiner's deposition so that Defendants were able to conduct an effective cross-examination on the topic. (Clerk's Dkt. No. 36 Ex. A at 74–84). Accordingly, the supplemental report should not be excluded. Notwithstanding, "post-termination retaliation" should be given its plain, rather than legal, meaning.

Based on the above, the undersigned finds Maldiner's testimony and report meet the standards set out in *Daubert* and Federal Rule of Evidence 702. Accordingly, the undersigned declines to exclude Maldiner as an expert.

### B. Zeringue

Defendants contend Zeringue's testimony and evidence should be excluded because: (1) she is not qualified to give opinions about mental anguish and emotional distress; (2) her testimony is not relevant and will not assist the trier of fact; and (3) her methods and testimony are unreliable.

First, Defendants assert Zeringue is not qualified to give opinions about mental anguish and emotional distress because she is not a therapist, psychologist, board certified psychologist, or

counselor, nor does she hold herself out as being trained in psychology or psychiatry. Moreover, Defendants argue, a nurse practitioner is not qualified to form any medical opinions about Saldana because she does not possess skill or knowledge greater than the average layman.

"As long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gate-keeping function. After that, qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity." *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded by statute on other grounds as noted in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002). Zeringue testified in her deposition that as an advanced practice nurse, she treats many patients with psychological disorders, including "major depressive disorder, anxiety, bipolar disorder, sleep issues, obsessive compulsive disorder, social anxiety disorder, [and] panic disorder." (Clerk's Dkt. No. 39 Ex. B "Zeringue Depo." 8:8–9:8). As Saldana points out, Zeringue has prescribed her anti-anxiety medications, hypnotics, and psychotherapy to address Saldana's stress and improve her mental and physical well-being. Moreover, Zeringue has been treating Saldana for over ten years. (Clerk's Dkt. No. 39 Ex. C). Zeringue can therefore testify from personal knowledge as to Saldana's symptoms and Saldana's doctor's diagnoses. (*Id.*). Accordingly, Saldana has shown Zeringue has a reasonable indication of qualification to testify as an expert. *See Sherwood v. Prison Health Sys.*, 2003 WL 22939251, at *11 (D. Maine Dec. 10, 2003) (nurse with personal knowledge whose medical opinion did not go beyond scope of a nurse's practice was qualified to testify as expert). Any further questions regarding her expertise are an issue for the jury. *See United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) ("[T]he witness must have such knowledge or experience in [her] field or calling as to make it appear that [her] opinion or inference will probably aid the trier in [the] search for truth." (quoting *United*

*States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992))).

Second, Defendants argue Zeringue's testimony is irrelevant and will not assist the trier of fact because Saldana is capable of describing her emotional distress and mental anguish herself. However, for reasons similar to those described above, Zeringue can testify regarding the medications she prescribed Saldana and their purposes, the reasons she prescribed Saldana medications, and can corroborate Saldana's testimony regarding the purported exacerbation of her stress symptoms dating as far back as ten years.

Third, Defendants maintain Zeringue's testimony and methods are unreliable because Zeringue simply advised Saldana to seek new employment, take a leave of absence, or take a vacation, which are not medical in nature. Again, "Zeringue also performed numerous medical exams of [Saldana] and prescribed [her] medications . . . ." (Clerk's Dkt. No 39 at 4). These acts are indisputably medical and can be testified to in support of Saldana's emotional distress and mental anguish. The undersigned therefore declines to exclude Zeringue's testimony on these bases. *See Dearmond v. Wal-Mart La. LLC*, 335 F. App'x 442, 445 (5th Cir. 2009) ("'[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable'; and, it 'must have the same kind of latitude in deciding how to test an expert's reliability . . . as it enjoys when it decides whether or not that expert's relevant testimony is reliable.'" (quoting *Kumho Tire*, 526 U.S. at 152)).

### C. Saldana

Defendants contend Saldana's expert testimony should be excluded because (1) her opinions have not been properly disclosed; and (2) she is not qualified to give expert opinions about TxDOT

policies, mental anguish, financial matters, Title VII issues, or any other matters.[2]

First, Defendants maintain Saldana's expert designation is faulty because she has not complied with Federal Rule of Civil Procedure 26(a)(2)(C). Rule 26(a)(2)(C) requires non-retained experts who are not required to give written reports provide a disclosure stating "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Instead, Saldana provided her CV; a letter she wrote to Warren Whitlock, Civil Rights Director for the Federal Highway Administration, which describes the events leading to her termination and opines regarding TxDOT's policies; and referred Defendants to her complaint, EEOC filing, and between 15,000 and 19,000 pages of Bates-stamped documents she has produced in this litigation. (Clerk's Dkt. No. 43 Ex. A–E). In effect, Saldana seeks to be designated as an expert on every subject involved in this litigation. Moreover, rather than stating the subject matter and providing a summary of facts and opinions on which she expects to testify, Saldana referred Defendants to thousands of pages of documents.

Saldana's expert designation is insufficient to satisfy Rule 26(a)(2)(C). *See Retractable Tech., Inc. v. Beckton, Dickinson and Co.*, 2013 WL 4776189, at * (E.D. Tex. Sept. 6, 2013) (mere reference to opinions discussed in deposition are "simply not a fair substitute for the summary required by Rule 26"); *Ingram v. Novartis Pharms. Corp.*, 282 F.R.D. 563, 565 (W.D. Okla. 2012) ("Again, mere reference to unspecified testimony is insufficient under [the Rule 26(a)(2)(C)] standard."). Saldana's expert testimony could be excluded on this ground alone. *See* FED. R. CIV. P. 37(c)(1) (if party fails to provide information as required by Rule 26(a), party may not use that

---

[2] The undersigned notes Saldana failed to timely respond to Defendant's motion to exclude her expert testimony. Saldana's response was seven days late. W.D. TEX. CIV. R. 7(e) ("A response to a nondispositive motion shall be filed not later than 7 days after the filing of the motion. If there is no response filed within the time period prescribed by this rule, the court may grant the motion as unopposed."). Nevertheless, the undersigned will consider Saldana's response, as the undersigned's ruling will be unfavorable to her.

information or witness to supply evidence, unless failure was substantially justified or is harmless). Nevertheless, the undersigned will address whether Saldana is qualified to testify as an expert.

Defendants maintain Saldana has failed to show she is an expert in any of the fields relevant to this lawsuit. It is Saldana's burden to prove her experts are qualified to give an expert opinion on the topics at issue in this suit. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The undersigned agrees with Defendants; the evidence Saldana submitted does not indicate she has expertise in human resource practices or policies, hiring/firing practices and policies, mental anguish, financial matters, Title VII issues, or any other matters germane to this case. The topic upon which Saldana might be an expert—her duties as Office of Civil Rights Disadvantaged Business Enterprise, Historically Underutilized Business Program and Small Business Enterprise Programs—does not require expert testimony pursuant to the Federal Rules of Evidence.[3] The Advisory Committee Notes to the 2000 Amendments explain that if opinion testimony is based on the particularized knowledge that a witness has by virtue of his or her position in his or her business, such testimony is not expert testimony pursuant to Rule 702. FED. R. EVID. 701 advisory committee's note (discussing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir.1993)). "[L]ay testimony 'results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field.'" *Id.* (*quoting State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)). Saldana therefore should not be permitted to testify as an expert. *See United States v. Mack*, 2000 WL 33993336, at *4 (S.D. Tex. May 16, 2000) (director of Texas Health Steps program could testify as a lay witness with personal knowledge of policies and procedures of program). Rather, she may offer opinion testimony as a lay witness. FED.

---

[3] Saldana also appears to be an expert in anthropology, and specifically anthropology relating to the African and African American Diaspora. However, Saldana fails to show this expertise is relevant to the instant litigation.

R. EVID. 701 (lay witnesses may give opinion testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702").

Saldana also seeks to "testify to her outcries of violations of federal law, as well as the discrimination that she and her staff [were] subjected to," and how "TxDOT violated federal regulations by not providing adequate accountability and producing unreliable data." (Clerk's Dkt. No. 43 at 4). First, to the extent that these opinions are legal in nature, they must be excluded. *See C.P. Interests, Inc.*, 238 F.3d at 697 (Fifth Circuit has repeatedly held that Federal Rules of Evidence do not allow witness to render conclusion of law). To the extent that they are not legal in nature, for reasons similar to those above, these topics are not the type contemplated by Federal Rule of Evidence 702. *See, e.g., Lightning Lube, Inc.*, 4 F.3d 1153 (business owner could give lay opinion testimony based on personal knowledge and participation in affairs of business). Therefore, Saldana's opinions regarding the root cause of her termination and her personal knowledge of policies and procedures are admissible as lay testimony. Saldana's expert testimony is therefore excluded, and she may not offer any opinions or evidence as an expert.

**IV.   ORDER**

Accordingly, it is hereby **ORDERED**:

Defendants' Motion to Exclude Plaintiffs Expert, Kyle Maldiner is **DENIED** (Clerk's Dkt. No. 36);

Defendants' Motion to Exclude Plaintiff's Expert, Aline Zeringue is **DENIED** (Clerk's Dkt. No. 37); and

Defendants' Motion to Exclude Expert Testimony of Tamela Saldana is **GRANTED** (Clerk's Dkt. No. 40).

**SIGNED** on June 29, 2015.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE